WO **JWB**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dean Joseph Woodburn, | No. CV 08-1201-PHX-MHM (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Ronolfo Macabuhay, et al., | |
| Defendants. | |

Plaintiff Dean Joseph Woodburn, who is represented by counsel, brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections physician Ronolfo Macabuhay and nurse assistant L. Mercado (Doc. # 1). Each Defendant has filed a summary judgment motion (Doc. ## 45, 47). Mercado's summary judgment motion is fully briefed (Doc. ## 54, 56). Plaintiff did not respond to Macabuhay's motion.

The Court will grant the motions and terminate the action.

**I. Factual Background**

Plaintiff's claims stem from his medical treatment at the ADC's Lewis Unit in Buckeye, Arizona (Doc. # 1 at 1). Plaintiff alleged the following facts: On July 3, 2006, Plaintiff informed Dr. Macabuhay that he had not received prescribed ear drops to treat "impacted" ear wax in his right ear (id. at 3). Dr. Macabuhay instructed registered nurse Vega and nurse's assistant Mercado to flush Plaintiff's right ear with a water and peroxide solution using a syringe with a "little hose" attached (id. at 4). Vega went to retrieve the hose and told Mercado to wait until she returned (id.) Without waiting for Vega to return,

Mercado filled a 8-9 inch syringe with the solution and began flushing Plaintiff's right ear and perforated Plaintiff's ear drum resulting in sudden, extreme pain and bleeding from the ear (id. at 4-5.) Vega rushed back to the room in response to Plaintiff's cries of pain and repeated her prior admonition that Mercado was to wait until she returned with the hose (id. at 5). The perforation caused Plaintiff to feel as though he would black out, a pulsating headache, dizziness, blurred vision, and "unbearable" pain (id.). Macabuhay came into the room and told Plaintiff that he would have to send Plaintiff to an ear, nose, and throat (ENT) specialist in two to three weeks (id.). He provided Plaintiff acetaminophen for 24 hours and said that he would order ear drops and an ENT appointment in two to three weeks (id.). On August 22, 2006, Plaintiff was examined by an ENT specialist, inserted an "ear wick" to drain the infection and ordered antibiotics (id. at 7-8).

Based on these facts, Plaintiff alleges that Macabuhay acted with deliberate indifference by repeatedly failing to order antibiotics, despite knowing that a non-sterile syringe had perforated his ear drum, and by failing to order pain medication despite repeated requests for treatment to alleviate his continuing symptoms (Count I). Plaintiff also alleges that Dr. Macabuhay acted with deliberate indifference to the ENT specialist's order for surgery on his ear (Count II). Plaintiff alleges that Mercado acted with deliberate indifference by performing medical procedures she was unqualified to perform and in direct contravention of express orders from Nurse Vega (Count III). He also alleges that she acted with deliberate indifference by failing to act on his requests for treatment for the side-effects from perforating his ear drum (Count IV). Plaintiff requested injunctive, compensatory, and punitive relief (Doc. # 1 at 7).

The Court ordered Mercado and Macabuhay to answer (Doc. # 7). Defendants filed their Answers (Doc. ## 40), and the parties engaged in discovery. Defendants have now each filed a summary judgment motion (Doc. ## 45, 47).

## II. Mercado's Motion for Summary Judgment

### A. Mercado's Contentions

In support of her motion, Mercado submits a separate Statement of Facts (Mercado

SOF) (Doc. # 46), which is supported by excerpts from Plaintiff's deposition (id., Ex. A, Pl. Dep.) and Plaintiff's medical records (id., Exs. B-K).

Mercado states that on June 29, 2006, she and Nurse Vega "took turns with a big syringe trying to flush out [Plaintiff's] right ear" (Mercado SOF ¶ 4). No ear wax came out of his ear, so Mercado and Vega called a doctor, who ordered ear drops and scheduled a follow-up for July 3 (id. ¶ 5). At the July 3 appointment, Macabuhay instructed Nurse Vega and Mercado to flush Plaintiff's ear with a "little hose" on a syringe (id. ¶ 7). Mercado began to flush Plaintiff's ear and Plaintiff began experiencing pain and bleeding in the external ear canal (id. at ¶¶ 12-14).

Plaintiff was given Ibuprofen on July 3 (id. ¶ 18). He was examined on July 11 and given more Ibuprofen and antibiotic ear drops (id. ¶ 22). Plaintiff submitted no Health Needs Request forms between July 11 and July 19, 2006.

### *2. Legal Arguments*

Mercado argues that she is entitled to judgment as a matter of law because Plaintiff has not introduced expert causation evidence to support his claim that Mercado's actions caused the alleged damage to his right ear (Doc. # 45 at 6). Specifically, Mercado claims that whether she is the cause of Plaintiff's injuries is beyond the realm of common knowledge. Mercado additionally argues that Plaintiff cannot establish that Mercado was deliberately indifferent to his serious medical needs (id. at 8).

### B. **Plaintiff's Response**

#### *1. Facts*

In response, Plaintiff argues that the facts establish that Mercado was deliberately indifferent to a substantial risk to Plaintiff's health. Plaintiff contends that Mercado was subjectively aware of the risk to Plaintiff's ear because Vega instructed her to wait before irrigating Plaintiff's ear. The fact that Mercado chose to proceed without the appropriate equipment reflects deliberate indifference. Plaintiff further argues that expert testimony is not necessary in this case because it is obvious that Mercado's actions caused Plaintiff's ear

1  injury.

## C. Mercado's Reply

In reply, Mercado maintains that Plaintiff's failure to introduce expert testimony is fatal to his claim because it is "beyond the realm of common knowledge" (Doc. # 56) (citing Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006)). Alternatively, Mercado reiterates her arguments that Plaintiff cannot establish deliberate indifference.

## III. Macabuhay's Motion for Summary Judgment

Macabuhay contends that he timely responded to Plaintiff's medical needs. He argues that he was not responsible for supervising nursing staff performing Plaintiff's ear irrigation or the speed in which the pharmacy filled prescriptions (Macabuhay SOF ¶ 22). Macabuhay maintains that he was not aware of any facts from which he could draw an inference that Plaintiff faced a substantial risk of serious harm. Specifically, Macabuhay asserts that after Plaintiff's unsuccessful July 3, 2006 ear irrigation, Macabuhay issued Plaintiff a non-duty/no work Special Needs Order and completed a request for Plaintiff to be seen by an ENT specialist (id. ¶¶ 46-47). Further, Macabuhay examined Plaintiff again on July 11 and ordered antiboitics, which Plaintiff received that day (id. ¶¶ 52-53).

Plaintiff saw the ENT specialist, Dr. Gael DeRouin, on August 22, 2006 (id. ¶ 55). Dr. DeRouin noted that the ear canal was collapsed, cleared out the ear canal with suction, inserted a wick, and applied antibiotic ear drops (id.). Dr. DeRouin documented his diagnosis of an infection of the right external ear canal and prescribed antibiotics. Macabuhay examined Plaintiff again on August 28 and prescribed antibiotic ear drops, which Plaintiff received on August 30 (id. ¶ 57).

Plaintiff refused a follow-up appointment with Dr. DeRouin on September 19 because of a conflict with a legal visit (id. ¶ 58). Macabuhay examined Plaintiff again on November 2, found yellow-green wax in the right ear, and prescribed wax-softening drops and antibiotic ear drops, which Plaintiff received on November 3 (id. ¶ 58).

At Plaintiff's December 12 follow-up with Dr. DeRouin, Plaintiff's hearing test

1  showed normal results, and Dr. DeRouin documented a perforation of the ear drum and a
2  chronic ear infection. Dr. DeRouin prescribed antibiotics and recommended a follow-up in
3  one month, which was scheduled for January 30, 2007 (id. ¶ 61).

4  When Macabuhay saw Plaintiff on December 21, 2006, Plaintiff claimed that Dr.
5  DeRouin recommended surgery on Plaintiff's right ear (id. ¶ 65). Macabuhay verified that
6  Dr. DeRouin's report did not recommend surgery (id.). Plaintiff's January 30, 2007 follow-
7  up was normal; Plaintiff's ear infection had resolved, and the ear canal swelling had
8  subsided. Dr. DeRouin noted that Plaintiff's right ear appeared normal and his hearing had
9  improved (id. ¶ 66).

10  In December 2007, February 2008, July 2008, and August 2008, Plaintiff had hearing
11  tests, follow-ups with specialists, and an MRI, which were all normal (id. ¶¶ 67-70).

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

**B.     Deliberate Indifference**

To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted).

A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60.

To act with deliberate indifference, a prison official must both know of and disregard

an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). To establish deliberate indifference, a prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

"[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). Therefore, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**IV. Analysis**

Mercado and Macabuhay do not dispute that Plaintiff suffered from a serious medical need, thereby satisfying the first prong of the deliberate indifference test. Estelle, 429 U.S. at 104. Thus, the summary judgment analysis turns on whether either Defendant's response to Plaintiff's serious medical need was deliberately indifferent. See Jett, 439 F.3d at 1096.

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837. In the medical context, deliberate indifference may be shown by a purposeful act or failure to respond to an inmate's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096.

Plaintiff has presented two claims of deliberate indifference against each Defendant. The Court will address each Defendant separately.

### A. Mercado

Mercado argues that she was not deliberately indifferent to Plaintiff's serious medical needs because she was not instructed to wait before performing the July 3, 2006 ear irrigation. Further, she argues that she did not perceive a substantial risk of serious harm to Plaintiff by performing the ear irrigation with the equipment she used and, therefore, any harm caused by the irrigation was not purposeful. Further, Mercado maintains that because Plaintiff has not proffered expert testimony to support his claim, there is no evidence that her actions were the proximate cause of his perforated eardrum and associated symptoms. She introduces evidence that Plaintiff sought treatment for his right ear before the unsuccessful July 3, 2006 irrigation (Mercado SOF ¶¶ 3, 33). Mercado also argues that Plaintiff's July 2008 MRI was normal (id. at ¶ 26). With respect to Plaintiff's second claim, Mercado introduces evidence that Plaintiff received pain medication on July 3, 2006, and antibiotics and pain medication on July 11. Further, Mercado contends that there is no evidence documenting any interaction with Plaintiff on July 19, 2006. Consequently, Mercado maintains that there is no evidence of a sufficiently serious constitutional deprivation on July 19, 2006.

#### *1. July 3, 2006 Ear Irrigation*

Plaintiff has consistently claimed that after Macabuhay instructed Vega and Mercado to irrigate Plaintiff's right ear, Vega told Mercado to wait until Vega returned with a small hose. In her motion, Mercado disputes that she ever received an instruction to wait, but she does not introduce her own affidavit or other evidence to support this statement. See

Barcamerica Int'l USA Trust v. Tyfield Imps., Inc., 289 F.3d 589, 593 n. 4 (9th Cir. 2002) (arguments and statements of counsel are not evidence) (citation omitted). Moreover, even if Mercado had introduced her own affidavit attesting that Vega never instructed her to wait to irrigate Plaintiff's right ear, the Court must still view the evidence in the light most favorable to Plaintiff. And he has attested that Vega told Mercado to wait until a small hose could be used to irrigate Plaintiff's right ear (Doc. # 46, Pl. Dep. at 2: 10-13). For purposes of this motion, the Court must therefore assume that Vega instructed Mercado to wait before performing the ear irrigation and Mercado chose to proceed despite this warning.

The Court finds that the parties' dispute about whether Mercado ever received a warning to wait before performing the ear irrigation is not material. Even assuming Mercado was warned to wait for the small hose, there is no evidence to show that her action in proceeding to irrigate Plaintiff's ear with the larger hose was anything more than negligent—perhaps grossly negligent—but not deliberately indifferent. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); Sanchez v. Vild, 891 F.2d 240, 241-42 (9th Cir. 1989).

Plaintiff does not allege that Mercado's actions were purposeful or intended to cause harm. Nor is there any evidence that she knew a perforated eardrum would result if she used the wrong hose to perform the irrigation.[1] Indeed, Plaintiff acknowledges that Mercado flushed his ear with a syringe and big hose without incident on June 29, 2006 (Mercado SOF ¶ 4). There is simply no evidence that Mercado knew that performing the ear irrigation with the larger hose constituted a substantial risk to Plaintiff's health or that using the larger hose was "medically unacceptable." Jackson, 90 F.3d at 332 (citing Farmer, 511 U.S. at 837). As a result, Mercado is entitled to summary judgment on Count III.

---

[1] The Court notes, however, that regardless of whether Mercado was deliberately indifferent to Plaintiff's serious medical needs, it is undisputed that Plaintiff suffered a perforation of his eardrum that was likely extremely painful and slow-healing. Consequently, Mercado's characterization of Plaintiff's injuries as "spurious" is not well-taken.

### *2. Treatment after the July 3, 2006 Ear Irrigation*

In his response, Plaintiff does not address Mercado's evidence that she did not refuse him any treatment on July 19, 2006, or at any point after the unsuccessful ear irrigation. Plaintiff's medical records do not reflect any interaction with a health care provider on July 19, and the record reflects that Plaintiff received antibiotics and Ibuprofen repeatedly after the ear irrigation (Mercado SOF ¶ 17-18, 20, 22). There is no evidence that Mercado deliberately prevented Plaintiff from receiving antibiotics after the ear irrigation. Consequently, the Court finds no genuine issue of material fact for trial and Mercado is entitled to summary judgment on Count IV.

**B.    Macabuhay**

Macabuhay has introduced evidence that he did not perceive a substantial risk of serious harm in delegating Plaintiff's right ear irrigation to the nursing staff and, when the irrigation was unsuccessful, took appropriate and consistent action in treating Plaintiff's ear infection and pain. Specifically, Macabuhay introduces evidence that he delegated the ear irrigation to the nursing staff and, after the ear irrigation was unsuccessful, examined Plaintiff immediately, referred Plaintiff to an ENT specialist, ordered antibiotics numerous times over the subsequent months, and examined Plaintiff numerous times over the subsequent months (Doc. # 48, Ex. B, Macabuhay Aff. ¶¶ 40, 45-46, 51-52, 56, 58). This evidence is sufficient to meet Macabuhay's initial burden of establishing a lack of a triable issue of fact as to his alleged deliberate indifference during Plaintiff's unsuccessful July 3, 2007 ear irrigation and in subsequent treatment. Plaintiff cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 474 U.S. 574, 586 (1986).

Plaintiff did not respond to Macabuhay's motion, but a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). Nevertheless, even considering the allegations in Plaintiff's Complaint, they

are still insufficient to create a genuine issue of material fact. There is no evidence that Macabuhay was aware of and disregarded a substantial risk of serious harm to Plaintiff when he delegated the July 3, 2007 ear irrigation to the nursing staff. Further, Plaintiff has not adduced any evidence tending to show that Macabuhay's subsequent treatment was deliberately indifferent. In short, Plaintiff's allegations are conclusory and unsupported by any evidence. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

To the extent that Plaintiff contends that Macabuhay should have acted differently in treating his right ear, such an argument is nothing more than a difference in medical opinion, which does not amount to deliberate indifference. Toguchi, 391 F.3d at 1058. Plaintiff, instead, must "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and citation omitted), that the treatment Macabuhay chose was medically unacceptable under the circumstances and that he chose this treatment "in conscious disregard of an excessive risk to plaintiff's health," Jackson, 90 F.3d at 332 (citing Farmer, 511 U.S. at 837). Plaintiff has not produced such evidence. In short, there is no evidence of deliberate indifference by Macabuhay after Plaintiff's unsuccessful July 3 ear irrigation. Macabuhay is entitled to summary judgment on the claims against him in Counts I and II.

**IT IS ORDERED:**

(1) The reference to the Magistrate is **withdrawn** as to Defendant Mercado's Motion for Summary Judgment (Doc. # 45) and Defendant Macabuhay's Motion for Summary Judgment (Doc. # 47).

(2) Defendant Mercado's Motion for Summary Judgment (Doc. # 45) is **granted**.

/ / /

(3) Defendant Macabuhay's Motion for Summary Judgment (Doc. # 47) is **granted**.

(4) This action is dismissed with prejudice, and the Clerk of Court must enter judgment accordingly.

DATED this 23rd day of July, 2010.

Mary H. Murguia
United States District Judge